UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| SHEIONTA BALTIMORE ) | |
| 12212 MONTREAT PLACE ) | Case No. 21-cv-_____ |
| WALDORF, MD 20601, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| THE COLLEGE OF SOUTHERN MARYLAND ) | |
| 8730 MITCHELL ROAD ) | |
| LA PLATA, MD 20646, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| serve on, ) | |
| ) | |
| GENERAL COUNSEL ) | |
| CRAIG W. PATENAUDE, ESQ. ) | |
| 8730 MITCHELL ROAD ) | |
| LA PLATA, MD 20646, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**COMPLAINT FOR EQUITABLE AND LEGAL RELIEF
AND JURY DEMAND**

**JURISDICTION AND VENUE**

1.    This is an action under Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d, *et seq*.,

("TITLE VI").  Title VI prohibits discrimination on the basis of race, color, and national

origin in programs and activities receiving federal financial assistance.  This action also

involves related state-law claims between the same parties.  Thus, jurisdiction is proper

under 28 U.S.C. §§ 1331 and 1367.

2.    Venue in the United States District Court for the District of Maryland is proper under 28

U.S.C. § 1391(b) because both Plaintiff and Defendant are residents of the State of

Maryland, have been so for more than the past six months, and the majority of acts

occurred in the State of Maryland.

## THE PARTIES

3.      Plaintiff, Sheionta Baltimore, an African American woman, is a United States citizen and

a Maryland resident.  Plaintiff is married with two minor children.  Plaintiff has lived in

Maryland more than a year prior to the filing of this action.

4.      From 2009 until 2015, Plaintiff served honorably in the United States Navy.  While in the

navy, Plaintiff was a hospital (medical) corpsman.  Plaintiff gained extensive nursing

experience while in the Navy.

5.      In May 2015, Plaintiff was honorably discharged from the United States Navy, as an E-4,

Third Class Petty Officer.

6.       From 2016 to 2020, she was a student at the College of Southern Maryland.

7.      The Defendant is the College of Southern Maryland ("Defendant" or "CSM").  It is a

public regional community college of established by the State of Maryland for post-

secondary education.

8.      Defendant CSM is a recipient of federal financial assistance.  The federal assistance that

Defendant receives is, in part, for the benefit of students, such as Plaintiff.

9.      By accepting federal funds, Defendant waived derivative sovereign immunity.

10.     Defendant declares in its published diversity statement that it is a college community that

is free from discrimination, intolerance, and harassment.

11.     In January 2020, Plaintiff enrolled in Defendant's nursing program.

## FACTS COMMON TO ALL COUNTS

12.   Using her G.I. Bill education rights[1], in October 2016, Plaintiff enrolled in CSM with a

      major in General Studies.

13.   Defendant accepted payment from Plaintiff by way of the GI Bill.

14.   Plaintiff's plan was to eventually enroll in the CSM registered nurse program.

15.   While in General Studies, Plaintiff completed the NUR 1050 course, Introduction to

      Professional Nursing, with a grade of "A."

16.   The nursing program is a two-year course of study that offers enrollees an associate

      science degree in nursing.

17.   During their time in the nursing program, students participate in class activities, clinical

      experiences, and in-lab experiences.

18.   Program graduates are eligible to take the National Council Licensure Examination for

      Registered Nurses (NCLEX-RN) or the examination for the Practical Nurses

      (NCLEX-PN).

19.   The associates degree allows students to eventually obtain the status of registered nurse.

20.   While enrolled in the nursing program, Plaintiff experienced treatment by Defendant that

      she believed to be harmful and discriminatory on the basis of race, and other factors.

21.   On or about October 6, 2020, Plaintiff filed a charge of discrimination with the

      Department of Labor's Office of Civil Rights ("OCR").

22.   On or about January 7, 2021, OCR dismissed Plaintiff's complaint without an

_____

[1]The Servicemen's Readjustment Act of 1944 is commonly known as the G.I. Bill.  It has
since been augmented and superceded by other legislation.

investigation.

23.    On or about March 10, 2021, Plaintiff filed an appeal of the OCR dismissal.

24.    Plaintiff also filed a complaint against Defendant with the Maryland Higher Education

Commission ("MHEC")

25.    MHEC refused to investigate Plaintiff's allegations.

**COUNT ONE**
**FALSE CHARGES OF PLAGIARISM**

26.    Plaintiff incorporates the averments in paragraphs 1 through 25 herein by reference as if

fully set forth.

27.    In September 2020, Plaintiff enrolled in a laboratory ("clinical") class called

"Management and Trends in Nursing."  The class was conducted by Instructor Aimee

Turacy.  Ms. Turacy is a Caucasian woman.

28.    The purpose of the class was to allow students to obtain clinical experience with hospital

patients.

29.    In 2020, due to the Covid 19 pandemic, Defendant did not allow the nursing students to

work in hospitals to obtain direct clinical experience.  As an alternative, Defendant

required nursing students to satisfy the clinical experience requirement in a computer

simulation program called SimEMR.

30.    SimEMR is an application that allows students to mimic the work of a nurse updating a

patient's medical chart and medical records, without actual contact with patients or

working inside a hospital.  The system allows students to update virtual medical charts

and dispense virtual medication to virtual patients.

31.   Proficiency in the use of the SimEMR program is essential to obtaining a passing grade.

32.   SimEMR is a complicated program that cannot be mastered without training from an experienced operator.

33.   Essentially, Plaintiff received only cursory training on the SimEMR program.

34.   Plaintiff was never given a practice run of the system, despite her requests for assistance.

35.   On more than one occasion, Plaintiff respectfully asked her instructor, Aimee Turacy, to assist her with learning how to use SimEMR.

36.   Turacy refused to assist Plaintiff.  In fact, in an email dated September 17, 2020, Turacy acknowledged: "I wanted to share some thoughts about the SimEMR clinical this past Tuesday.  I know that most of you have not had experience with this program in this way before, which led to a lot of complaints about the patient simulation and navigating through the program.  I realize this is not like the Vsims like in OB/Peds. ... .  I know you all may have frustrations and feel overwhelmed with the SimEMR program, but, we all need to *stop the whining and complaining* (emphasis added), learn to be flexible and adaptable to change and the unknown, and move on with the semester on a positive note."

37.   On September 15, 2020, Plaintiff was given an assignment in which she was required to use the SimEMR program.

38.   Plaintiff did not complete the September 15, 2020 assignment.

39.   Plaintiff did not complete the assignment because Defendant adamantly refused to grant Plaintiff's request for assistance with the SimEMR program.

40.   Although Plaintiff did not complete the assignment, she saved her resource notes in the program.

41.   On September 19, 2020, Plaintiff sent an email to Instructor Turacy to make it clear to Professor Turacy that Plaintiff had not completed the assignment and that her late entries in the SimEMR program were for practice and were not intended to be considered her submission.

42.   In fact, Plaintiff requested additional assistance from Instructor Turacy.

43.   Turacy emailed Plaintiff to inform Plaintiff that she would not be allowed time to finish the assignment.

44.   Turacy emailed Plaintiff to inform Plaintiff that the "Management and Trends in Nursing" Course Coordinator, Dr. Lynn Kennedy, did not authorize her to provide additional assistance with "Management and Trends in Nursing" assignments in the SimEMR program.

45.   Plaintiff continued to inform Instructor Turacy that she needed assistance with the assignments in the SimEMR program.  Turacy became hostile and refused to help Plaintiff.

46.   When Plaintiff complained about the difficulty she was experiencing with SimEMR, Dr. Lynn Kennedy, a Caucasian woman, the Course Coordinator for Defendant, in an email dated September 30, 2020, at 1:39 P.M., asked Plaintiff: "Is this something that could be worked through with on a zoom meeting with you, Instructor Turacy, and myself or is it a purely SimEMR product issue that needs the attention of the SimEMR vendor?"

47.   On or about September 30, 2020, Plaintiff became frustrated with her attempts to use SimEMR and requested a meeting with Instructor Turacy for her to go over the program with Plaintiff.  The meeting was scheduled for October 5, 2020.

48.    On October 5, 2020, when Plaintiff arrived at the SimEMR meeting, Plaintiff came to the meeting for the express purpose of seeking assistance with SimEMR.

49.    The purpose of the meeting was articulated by Dr. Lynn Kennedy in her email of September 30, 2020.  *See* ¶ 46 above.

50.    Once the meeting started, Instructor Turacy told Plaintiff that the purpose of the meeting was to inform Plaintiff that Defenfant was charging Plaintiff with plagiarism in the September 15, 2020 SimEMR assignment.

51.    Prior to October 5, 2020, the stated purpose of the October 5, 2020 zoom meeting was to discuss Plaintiff's difficulty with SimEMR.

52.    Prior to the meeting, neither Turacy nor Kennedy informed Plaintiff that the issue of plagiarism would be discussed at the meeting.

53.    Instead of informing Plaintiff as to the real purpose of the meeting, Defendant through Turacy and Kennedy misled Plaintiff into understanding that the October 5, 2020 meeting was to address her concerns with SimEMR, only.

54.    Thus, by bringing up allegations of plagiarism at a meeting purportedly about the SimEMR simulation, Defendant ambushed Plaintiff.

55.    The manner in which Defendant accused Plaintiff of plagiarism violated Defendant's express, written policies, in Defendant's Student Conduct Handbook.

56.    Defendant claimed that the work that Plaintiff had done on September 15, 2020, was an attempt by Plaintiff to pass off another person's work as her assignment.  Defendant knew full well that on September 19, 2020, Plaintiff had informed Defendant's agent, Instructor Aimee Turacy, that the work that Plaintiff had input into the system was practice only.

Thus, Defendant knew for weeks prior to October 5, 2020 that Plaintiff had not attempted to plagiarize her September 15, 2020 assignment.

57.    Defendant rushed to judgment and "determined" that Plaintiff had plagiarized her assignment without so much as an investigation and without giving Plaintiff an opportunity to defend herself.

58.    The Student Conduct Handbook, at section VI(4)(a)  states: a. When a complaint or information alleging misconduct is received, the Student Conduct Administrator, or designee, will conduct a preliminary investigation.  During the investigation the Student Conduct Administrator will collect and review all relevant information and, as necessary, conduct interviews with complainant, respondent, and any appropriate witnesses.

59.    The Student Code of Conduct Handbook further states, at section VI(4)(b): b. "During the mandatory meeting with the respondent, the complaint and behaviors that allegedly violated the Student Code of Conduct and potential sanctions will be reviewed; *the student will have the opportunity to respond to the complaint; reasonably access and review any information collected; and to review and ask questions regarding the student conduct procedures and the student's rights in the procedures* (emphasis added).  The complainant will also be provided with a comparable meeting opportunity."

60.    The Student Code of Conduct Handbook further states at Section VI(4)(b)c: "Throughout the student conduct process both the complainant and the respondent have the right to be assisted, at their own expense, by an advisor of choice.  Advisors must be a member of the college community and may not be an attorney.  Advisors will not be permitted to actively advocate, speak, or submit information on the behalf of the complainant or

respondent.  If a student chooses to be accompanied by an advisor the student should select an advisor whose schedule allows attendance at the scheduled date and time for all conduct proceedings since delays will not normally be allowed due to the scheduling conflicts of an advisor."

61. Student Code of Conduct Handbook further states in Section VI.4(a): "The respondent will be sent a written request to participate in a mandatory meeting with the Student Conduct Administrator.  Involved parties will be contacted using their home address and electronic mailing address on record with the Registrar for all conduct-related matters."

62. Student Code of Conduct Handbook further states: b. "During the *mandatory* (emphasis added) meeting with the respondent, the complaint and behaviors that allegedly violated the Student Code of Conduct and potential sanctions will be reviewed; the student will have the opportunity to respond to the complaint; reasonably access and review any information collected; and to review and ask questions regarding the student conduct procedures and the student's rights in the procedures."

63. Defendant failed to honor and implement the procedures that are mandated by the Student Code of Conduct Handbook.

64. Defendant failed to inform Plaintiff in advance of the October 5, 2020, meeting that she was being charged with plagiarism at the meeting.

65. Defendant did not afford Plaintiff an opportunity to prepare a defense.

66. Defendant did not afford Plaintiff an opportunity to obtain representation.

67. Defendant did not afford Plaintiff an opportunity to provide evidence in her defense.

68. On or about October 5, 2020, Defendant "determined" that Plaintiff committed

plagiarism without a process that is free from discrimination, intolerance, and harassment.

69.    Defendant ignored Plaintiff's right to be informed of the "mandatory meeting" and the right to review the allegations, and to have an advisor to assist her.

70.    On October 7, 2020, Kevin Hunter, an African American man, who is Defendant's Director of Student Affairs and Conduct, sent Plaintiff a letter with appeal rights.

71.    On October 12, 2020, in a meeting with Director Hunter, Hunter told Plaintiff that she should not file an appeal, rather she should seek reimbursement for the cost of the class.

72.    Defendant determined that Plaintiff committed the plagiarism without a fair investigation and hearing.

73.    In an email dated September 19, 2020, Plaintiff informed Instructor Turacy that the assignment that Turacy declared to be plagiarism was not Plaintiff's submission for her assignment work but rather was Plaintiff's practice using the SimEMR program.

74.    On or about December 11, 2020, Defendant issued Plaintiff a failing grade in her "Management and Trends in Nursing" class for alleged plagiarism.

75.    Based on the failure, Plaintiff was forced to drop out of the nursing program.

76.    Plaintiff was harmed by being forced to drop out of the nursing program.

77.    The summary process that Defendant used against Plaintiff was routinely used against African American and other minority students as a method to drop them from the nursing program.  These tactics were not used against Caucasian students.

78.    During the same class, Management and Trends in Nursing, a Caucasian student, Katie Klotz, had submitted an assignment that Defendant had deemed improper.  Ms. Klotz received a failing grade on the assignment.

79. Ms. Klotz sent an email explaining that she had innocently submitted the improper assignment.  Defendant immediately gave Klotz a passing grade.

80. There was no rush to judgment with the Caucasian student and there was no effort to punish the Caucasian student.

81. Section 13B.02.02.19G of the Code of Maryland Regulations states that an in-State educational institution shall adhere to published student grievance procedures that assure a fair and timely review of student complaints.

82. Defendant is an in-state education institution.

83. Plaintiff complained to Defendant that she did not receive a fair hearing on the issue of Plagiarism.

84. Defendant refused to provide Plaintiff with a fair and timely review of her complaint.

85. Turacy and Kennedy acted with intent and malice in discriminating against Plaintiff.

86. The methods, as outlined above, constitute racial discrimination in violation of Plaintiff's civil rights.

   WHEREFORE, Plaintiff seeks injunctive relief, reinstatement, removal of failing grades, reimbursement of payments, damages, costs, and reasonable attorney's fees.

## COUNT TWO
## DISCRIMINATORY PUNISHMENT
## FOR TARDINESS

87. Plaintiff incorporates the averments in paragraphs 1 through 25 herein by reference as if fully set forth.

88. In the Spring of 2019, Plaintiff was enrolled in a class called Nursing Fundamentals.

89. On or about April 29, 2019, Plaintiff arrived one minute late for the class.  The class

started at 9:30 A.M.; Plaintiff arrived to the class at 9:31 A.M.  Plaintiff was penalized by

Instructor Linda Goodman for arriving one minute late to a Nursing Fundamentals class.

90.    Caucasian students were tardy on numerous days without penalty by Linda Goodman.

91.    The penalty included an automatic absence and essay assignment about the Nursing Code

of Ethics and professionalism.

92.    The disparity in consequences for tardiness constitutes invidious racial discrimination, in

violation of federal law, state law and Defendant's code of ethics.

93.    Plaintiff was harmed by Defendant's disparate treatment.

94.    Defendant, through its agent, Instructor Linda Goodman, acted intentionally and

maliciously in discriminating against Plaintiff.

WHEREFORE, Plaintiff seeks injunctive relief, reinstatement, removal of failing grades,

reimbursement of payments, damages, costs, and reasonable attorney's fees.

## COUNT THREE
## DISPARATE AND DISCRIMINATORY GRADING
## COUNT FOUR
## VIOLATIONS OF FEDERAL AND MARYLAND LAW

95.    Plaintiff incorporates the averments in paragraphs 1 through 25 herein by reference as if

fully set forth.

96.    On or about September 8, 2020, Plaintiff and a group of other students were given a

group assignment to draft a report and an annotated bibliography.  The assignment was

called "capstone project."

97.    Each capstone group member was assigned to write an article and to compile an

annotated bibliography.

98.   During the project, disputes arose between the group members regarding the authorship of some of the research.

99.   Plaintiff complained to Dr. Polk, the Chair of Defendant's School of Health and Science, who both dismissed Plaintiff's complaint.

100.   Plaintiff sought to appeal the dismissal of her complaint by writing to Dr. Mitchell Levy, Vice president of Academic Affairs and to Kevin Hunter, Director of Student Affairs.

101.   Mr. Hunter took no action to address Plaintiff's informal appeal.

102.   A Caucasian student in the Capstone project was given a "zero" grade for using improper material for her section of the annotated bibliography in the "Management and Trends in Nursing course."  The student appealed to Dr. Lynn Kennedy for clemency.

103.   The Caucasian student requested additional assistance with the assignment and appealed to Dr. Lynn Kennedy for grading clemency. Dr. Lynn Kennedy authorized Dr. Laura Polk to give  additional assistance to the Caucasian student and Dr. Kennedy gave the Caucasian student a passing grade.

104.   Plaintiff was given a "zero" grade for the same course as the Caucasian student.

105.   In both cases, the students were alleged to have submitted improper material as the scholarly references for an assignment in the Fall 2020 "Management and Trends in Nursing" course.

106.   Plaintiff had already informed Defendant by email on September 19, 2020, that she had not submitted said material as her completed assignment.

107.   Plaintiff appealed to Defendant for reconsideration of her failing grade.  Defendant refused to even consider Plaintiff's pleas and explanation.

108.   Defendant denied Plaintiff her right to be heard and to be treated with the same respect
       that is accorded to Caucasian students.

109.   Defendant dismissed Plaintiff from the nursing program due to the failing grades issued
       by Defendant.

110.   Section 13B.02.02.19F of the Code of Maryland Regulations states that an in-State
       institution shall develop a statement of the rights, privileges, and responsibilities of
       students, and make this statement available to students through the catalog, student
       handbook, or other appropriate means.

111.   Section 13B.02.02.19G of the Code of Maryland Regulations states that an in-State
       institution shall adhere to published student grievance procedures that assure a fair and
       timely review of student complaints.

112.   Plaintiff complained to Defendant that she did not receive a fair hearing on the issue of
       Plagiarism.

113.   Defendant refused to provide Plaintiff with a fair and timely review of her complaint.

       WHEREFORE, Plaintiff seeks injunctive relief, reinstatement, removal of failing grades,
reimbursement of payments, damages, costs, and reasonable attorney's fees.  Plaintiff further
prays that this Honorable Court enjoin Defendant's discriminatory practices and require
Defendant to reinstate Plaintiff to her former student status.

## COUNT FIVE
## BREACH OF CONTRACT

114.   Plaintiff incorporates the averments in paragraphs 1 through 25 herein by reference as if
       fully set forth.

115.   Defendant guarantees that all students will be treated in a manner that is free from discrimination.

116.   When Plaintiff enrolled in CSM, the parties entered into a contract in which Plaintiff promised to pay for a nursing education free from racial discrimination.

117.   Defendant agreed to provide a nursing education free from racial discrimination.

118.   Defendant had a contractual duty to accord Plaintiff her civil rights to be free from racial discrimination.

119.   By denying Plaintiff her civil rights, Defendant breached its contract with Plaintiff.

WHEREFORE, Plaintiff seeks injunctive relief, reinstatement, removal of failing grades, reimbursement of payments, damages, costs, and reasonable attorney's fees.  Plaintiff further prays that this Honorable Court enjoin Defendant's discriminatory practices and require Defendant to reinstate Plaintiff to her former student status.

## COUNT SIX
## INJUNCTIVE RELIEF

120.   Plaintiff incorporates the averments in paragraphs 1 through 25 herein by reference as if fully set forth.

121.   Defendants have engaged in policies and practices that have discriminated against Plaintiff.

122.   Defendant's discriminatory policies, patterns and practices are based on racial discrimination in violation of Defendant's civil rights that are guaranteed by the United States Constitution, federal law and Maryland law.

123.   Defendant's actions constitute ongoing violations of federal law.

WHEREFORE, Plaintiff prays that this Honorable Court enjoin Defendant's discriminatory practices and require Defendant to reinstate Plaintiff to her former student status.

## PRAYER FOR RELIEF

Plaintiff prays that the Court:

A.    Award Plaintiff judgment on all counts.

B.    Award Plaintiff compensatory, special and actual damages.

C.    Award Plaintiff reasonable attorney's fees, fees, and costs.

D.    Award Plaintiff equitable relief, including reinstatement to the nursing program.

E.    Grant Plaintiff Academic Clemency, and

F.    Grant such additional relief as is just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury for all matters so triable.

## VERIFICATION

I certify that the foregoing is true based on my best knowledge, information and belief.


11/29/2021                                        _Sheionta Baltimore_ (signature)
Date                                              Sheionta Baltimore



Respectfully submitted,

_Raouf M. Abdullah_
Raouf M. Abdullah, Bar # _____
Attorney for Plaintiff